IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) |
| | ) Case No. 24-00707 |
| Hollie Ray Boutique, LLC | ) Chapter 11 |
| | ) Judge Mashburn |
| Debtor. | ) |

**DEBTOR'S SECOND AMENDED DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**
(Subchapter V)

This Plan is for a small business debtor under Subchapter V. Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes "(A) a brief history of the business operations of the debtor;(B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."

A. <u>Brief History of the Business Operations of the Debtor</u>.

The Debtor, Hollie Ray Boutique LLC was formed in 2016, and is a retail clothing business. The principal office is in Franklin Tennessee. In late 2022-2023, the Debtor attempted to expand and opened additional locations. The Debtor was not able to continue the main location, in the Green Hills Mall, so they ended up entering leases to have retail store locations at Hamilton Place Mall and the new Tanger Mall location in Nashville. They also relocated and established their new primary retail location at 5th and Broad in Nashville. The Debtor experienced unfortunate similar circumstances at both the Tanger Mall and the Hamilton Mall locations. There were shootings that resulted in loss of life and left both of those locations without the traffic and resulting sales necessary to be successful. The Debtor also had personnel changes with the records and bookkeeping. The cash balance sheets became unbalanced resulting in tax obligations and high interest merchant capital loans. These setbacks contributed to this Chapter 11 filing. The Debtor has consolidated locations, reduced expenses and proposes this plan to get the business successfully reorganized.

B. <u>Debtor's Assets: Liquidation Analysis</u>.

To confirm a plan under Bankruptcy Code section 1191, whether the plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth in Bankruptcy Code section 1129(a)(7). Thus, this Plan must provide holders of Allowed Claims with not less than they would receive if the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, the Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtor will be, or is reasonably likely to be, able to make the Distributions as contemplated by the Plan. Additionally, the Plan must include: (a) a brief history of the business operations of the Debtor; (b) the Debtor's liquidation analysis; and (c) projections with respect to the Debtor's ability to make the Distributions provided for under the Plan. See 11 U.S.C. §

1190(1). The Debtor submits that this Plan provides the necessary content required by Bankruptcy Code section 1190 and, as set forth more fully below, is confirmable under section 1191 because: (i) pursuant to the terms of the Plan, holders of Allowed Claims will receive not less than they would in a hypothetical Chapter 7 liquidation; (ii) it is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) it is feasible, as the Debtor will be able to make all payments under the Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii). A liquidation analysis is attached as to this proposed plan as (Exhibit A).

C. <u>Feasibility Projections</u>.

The Debtor attaches five-year projections showing that this plan is feasible (Exhibit B).

## ARTICLE I
## SUMMARY

1.01 This Plan of Reorganization under Chapter 11 of the Code (the "Plan") proposes to pay the following creditor classes from cash flow from the business operations and future income of the Debtor as set forth herein.

1.02 This Plan provides for:

| | |
|---|---|
| Two (2) | Class of Administrative priority claims; |
| Seven (7) | Classes of secured claims; |
| One (1) | Class of non-priority unsecured claims; |
| and One (1) | Class of Equity Security Holders. |

I.03 Non-priority unsecured creditors holding allowed claims will receive pro rata distributions totaling $8,000.00 from the debtor. This Plan also provides for the payment of administrative and priority claims. Debtor estimates that non-priority unsecured creditors will receive approximately a .0045% disbursement.

I.04 All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim.

**1.05 Your rights may be affected. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

<u>2.01</u>     <u>Class 1</u>.     This class consists of the Allowed Priority Claims of NW Office & Retail, LLC.

2.02     Class 2.     This class consists of the Allowed Priority Claims of Cool Springs Mall, LLC.

2.03     Class 3.     This class shall consist of the claim of the U.S. Small Business Administration (Court Claim #11) to the extent allowed as a secured claim under § 506 of the Code.

2.04     Class 4.     This class shall consist of the claim of Bill Me later, Inc. (Court Claim #12) to the extent allowed as a secured claim under § 506 of the Code.

2.05     Class 5.     This class shall consist of the claim of Funding Metrics LLC. (Court Claim #7) to the extent allowed as a secured claim under § 506 of the Code.

2.06     Class 6.     This class shall consist of the claim of Vox Funding, LLC (Court Claim #23) to the extent allowed as a secured claim under § 506 of the Code.

2.07     Class 7.     This class shall consist of the claim of Reliance Financial (Court Claim #22) to the extent allowed as a secured claim under § 506 of the Code.

2.08     Class 8.     This class shall consist of the claim of Fox Capital Group, Inc. (Court Claim #18) to the extent allowed as a secured claim under § 506 of the Code.

2.09     Class 9.     This class shall consist of the claim of FirstBank (Court Claim #9) to the extent allowed as a secured claim under § 506 of the Code.

2.10     Class 10.     This class shall consist of all unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contract or unexpired lease, each allowed claim secured by a lien on property in which the Debtor has an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.

2.11     Class 11.     This class shall consist of the interests of the individual Debtor in property of the estate.

## ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS. PRIORITY TAX CLAIMS AND, AND COURT FEES

3.01     Unclassified Claims. Pursuant to § 1123(a)(1), administrative expense claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

3.02 <u>Administrative Claims</u>. Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

> 3.02.1 In the alternative to Article 3.02, in the event this Plan is non-consensually confirmed under § 1191(b), each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full through cash disbursement of all available funds that are not specifically dedicated to set monthly payments within this Plan.

3.03 <u>Priority Tax Claims</u>. Other than the claim of the Tennessee Department of Revenue, which shall be paid in accordance with the provisions in Section 3.03.02 of this plan, with respect to a claim of a kind specified in § 507(a)(8), the holder of such claim will receive on account of such claim regular installment cash payments of a total value, as of the Effective Date, equal to the allowed amount of the priority portion of such claim, over a period not to exceed sixty (60) months from the Petition Date, unless the holder of such claim consents to a different treatment of such claim. No penalty shall accrue on such priority tax claims after the Petition Date. The non-priority general unsecured portion(s) of the allowed claims of the holders of priority tax claims, including the penalty and interest accrued thereon, shall be treated in the unsecured class within this Plan, and shall be subject to any discharge granted to the Debtor under § 1192.

> 3.03.01 <u>Internal Revenue Service.</u> The allowed priority amount owed to the Internal Revenue Service (Claim as $307,563.92 and scheduled by the debtor to total $184,871.00) for certain tax liabilities will be paid within this plan. The claim outlines several estimated amounts that the IRS claims and the debtor's scheduled amount is based on the filed returns. The plan provides for payments based on the debtor's tax filings versus the claimed amount. The debtor acknowledges that the claimed amount controls and anticipates the IRS filing an amended claim based on the actual filings. The final balloon payment will also cover any remaining discrepancy between the scheduled and claimed amounts. The priority tax obligation will be paid in full via deferred cash payments as follows:
>
>> (i) Sixty (60) monthly installments of principal and interest shall be made in the amount of $3,489.00 beginning on the 14th day of the first month following the Effective Date and subsequent payments will be due on the 14th day of each month thereafter until the secured claim is paid in full.
>>
>> (ii) One (1) final payment of any remaining balance to be made on or before June 2029;

(iii) From the effective Date until full satisfaction of the priority claim, interest shall accrue at the fixed rate of 5% per annum on the unpaid allowed priority claim balance.

3.03.02 <u>Tennessee Department of Revenue</u>. The allowed priority amount owed to the Tennessee Department of Revenue for certain tax liabilities will be paid within this plan. The priority tax obligation (claimed as $145,854.08) will be paid in full via deferred cash payments as follows:

(i) Sixty (60) monthly installments of principal and interest shall be made in the amount of $2,753.00 beginning on the 7th day of the first month following the Effective Date and subsequent payments will be due on the 7th day of each month thereafter until the claim is paid in full.

(ii) One (1) final payment of any remaining balance to be made on or before October 2029;

(iii) From the effective Date until full satisfaction of the priority claim, interest shall accrue at the fixed rate of 5% per annum on the unpaid allowed priority claim balance.

3.04 <u>Post-Confirmation Tax Claims</u>. All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

ARTICLE IV
<u>TREATMENT OF CLAIMS. LIENS. AND INTERESTS UNDER THE PLAN</u>

4.01 Claims and interests shall be treated as follows under the Plan:

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 1 | NW Office and Retail, LLC, ("Landlord") | Yes |
| *Plan Treatment* | | |
| Landlord shall have two allowed administrative expense claims in this Chapter 11 bankruptcy case totaling $177,048.37 in connection with the Debtor's election to assume that certain Lease between the Debtor and the Landlord for the use of 2,128 square feet in Space C104 located at 501 Commerce Street, Nashville, Tennessee 37203 (the "Lease") pursuant to the Plan, and the cure of the Debtor's defaults under the Lease. The first allowed administrative expense claim is for unpaid pre-petition rent in the amount of $92,048.47 (the "Rent Cure"), and the second allowed administrative expense claim represents Landlord's pecuniary losses under the Lease resulting from Debtor's other defaults under the Lease, including attorneys' fees, in the amount of $85,000.00 (the "Pecuniary Loss Cure"). | | |

Payment Terms

In addition to paying all rent due under the Lease when such amounts become due and owing, the Debtor shall pay the Rent Cure in equal monthly installments each in the amount of $3,835.35 over twenty-four (24) months until the Rent Cure is paid in full, with the first installment being due on the first day of the first calendar month following the date that the Court enters an order on the docket in the Debtor's bankruptcy case confirming this Plan (the "Confirmation Date") and each subsequent payment being due on first day of each month thereafter.

In addition to paying all rent due under the Lease when such amounts become due and owing, the Debtor shall also pay the Pecuniary Loss Cure in the three (3) installments with the first installment in the amount of $28,334.00 being due three (3) days after the Confirmation Date, the second installment in the amount of $28,333.00 being due six (6) months after the Confirmation Date, and the third installment in the amount of $28,333.00 being due twelve (12)
months after the Confirmation Date.

Strict Compliance with the Payment Terms Under the Plan and the Lease

The Debtor agrees that it shall strictly comply with the payment schedule set forth in this Plan and the payment terms for prospective rent under the Lease. In the event that the Debtor fails to timely make any of the cure payments referenced in this Plan or timely pay any rent due under
the Lease, then Landlord may provide the Debtor with notice of such payment default or defaults
by emailing the Debtor a default notice at the following email address [INSERT]. After such notice is sent the Debtor shall then have three (3) days to cure any such payment default or defaults, and if the Debtor fails to timely cure such payment default or defaults then Landlord shall have the right in its sole discretion, without further order of the Court, to: (i) immediately terminate the Lease without any further notice to the Debtor, (ii) accelerate any and all of the Debtor's obligations under this Plan and the Lease without any further notice to the Debtor, and/or (iii) exercise any and all other remedies under the Lease or applicable law.

Waivers Related to the Automatic Stay and Eviction

The Debtor expressly agrees and stipulates that Landlord would not have agreed to the terms of
this Plan or its treatment under the Plan, and would have objected to confirmation of this Plan, unless the Debtor agreed to: (i) waive the right to contest any motion or application for relief from the automatic stay provided under Section 362 of the Bankruptcy Code or any similar injunction provided under Section 105 of the Bankruptcy Code related to the Lease or the premises that is the subject of the Lease in any subsequent bankruptcy proceeding, and (ii) waive the right to contest any eviction or similar proceeding under state law related to the Lease or the premises that is the subject of the Lease. Accordingly, the Debtor waives the right to challenge or contest any motion or application related to the Lease or premises that is the subject of the Lease filed by Landlord for relief from the automatic stay provided under Section 362 of the Bankruptcy Code or any similar injunction provided under Section 105 of the Bankruptcy Code in event that (i) the Debtor files a subsequent bankruptcy petition under the Bankruptcy Code or (ii) one or more creditors files an involuntary bankruptcy against the

Debtor under the Bankruptcy Code. Further, in the event that Debtor defaults under the terms of the Lease or this Plan, which default is not cured within the timeframe to cure such default as set forth in this Plan (related to a payment default) or the Lease (related to all other defaults), then the Debtor waives the right to contest or challenge any eviction or similar proceeding under state law related to the Lease or the premises that is the subject of the Lease.

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 2 | CoolSprings Mall, LLC (Court Claim 3) | Yes |
| *Plan Treatment* | | |
| The post-petition lease priority claim of **CoolSprings Mall, LLC** shall be allowed and as paid in full in the amount of $7,074.72. This claim will be pro-rata, with interest at a fixed rate of 0.00% per annum, over sixty (60) months. | | |

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 3 | U.S. Small Business Administration (Court Claim #11) | Yes |
| *Plan Treatment* | | |

The secured claim of the U.S. Small Business Administration shall be allowed in the amount of $359,077.76 less any adequate protection payments under the plan.

This secured portion of the claim will be ($76,477.11) to paid under the plan as follows:

(i) Eighty-Four (84) equal monthly payments of $1,037.00.

(ii) Interest rate shall accrue at the fixed rate of 3.75%.

(iii) The first monthly installment payment will be due on the 15th day of the first month following the Effective Date and subsequent payments will be due on the 15th day of each month thereafter until the secured claim is paid in full. Any pending Adequate Protection Payments will continue to accrue until the Effective Date.

(iv) Any terms of the existing note and security agreement evidencing this claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 4 | Bill Me later, Inc. (Court Claim #12) | Yes |
| *Plan Treatment* | | |
| This class shall consist of the Bill Me later, Inc. claim and be allowed in the amount of $13,172.98. To the extent allowed as a secured claim under § 506 of the Bankruptcy Code. The Class 4 Claimant has an ostensible lien in the accounts receivable of Hollie Ray Boutique LLC (junior to the U.S. Small Business Administration) and these assets have no value to support a secured claim pursuant to 11 U.S.C. § 506. Therefore, the Class 4 Claimant will be treated as a secured creditor under the Plan in the amount of **$0.00.** Any allowed claim of Bill Me later, Inc. will be treated in the general unsecured class under this Plan. Confirmation of the Plan shall act as an avoidance of any lien rights held by Bill Me later, Inc. pursuant to 11 U.S.C. § 506(d). Any terms of the existing note and security agreement evidencing this claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan. | | |

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 5 | Funding Metrics LLC. (Court Claim #7) | Yes |
| *Plan Treatment* | | |
| This class shall consist of the Funding Metrics LLC claim and shall be allowed in the amount of $28,727.73. To the extent allowed as a secured claim under § 506 of the Bankruptcy Code. The Class 5 Claimant has an ostensible lien in the accounts receivable of Hollie Ray Boutique LLC (junior to the U.S. Small Business Administration) and these assets have no value to support a secured claim pursuant to 11 U.S.C. § 506. Therefore, the Class 5 Claimant will be treated as a secured creditor under the Plan in the amount of **$0.00.** Any allowed claim of Funding Metrics LLC will be treated in the general unsecured class under this Plan. Confirmation of the Plan shall act as an avoidance of any lien rights held by Funding Metrics LLC pursuant to 11 U.S.C. § 506(d). Any terms of the existing note and security agreement evidencing this claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan. | | |

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 6 | Vox Funding, LLC (Court Claim #23) | Yes |
| *Plan Treatment* | | |
| This class shall consist of the Vox Funding, LLC claim and shall be allowed in the amount of $22,313.52. To the extent allowed as a secured claim under § 506 of the Bankruptcy Code. The Class 6 Claimant has an ostensible lien in the accounts receivable of Hollie Ray Boutique | | |

LLC (junior to the U.S. Small Business Administration) and these assets have no value to support a secured claim pursuant to 11 U.S.C. § 506. Therefore, the Class 6 Claimant will be treated as a secured creditor under the Plan in the amount of **$0.00.** Any allowed claim of Vox Funding, LLC will be treated in the general unsecured class under this Plan. Confirmation of the Plan shall act as an avoidance of any lien rights held by Vox Funding, LLC pursuant to 11 U.S.C. § 506(d). Any terms of the existing note and security agreement evidencing this claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 7 | Reliance Financial (Court Claim #22) | Yes |
| *Plan Treatment* | | |

This class shall consist of Reliance Financial claim and shall be allowed in the amount of $10,546.82. To the extent allowed as a secured claim under § 506 of the Bankruptcy Code. The Class 7 Claimant has an ostensible lien in the accounts receivable of Hollie Ray Boutique LLC (junior to the U.S. Small Business Administration) and these assets have no value to support a secured claim pursuant to 11 U.S.C. § 506. Therefore, the Class 7 Claimant will be treated as a secured creditor under the Plan in the amount of **$0.00.** Any allowed claim of Reliance Financial will be treated in the general unsecured class under this Plan. Confirmation of the Plan shall act as an avoidance of any lien rights held by Reliance Financial pursuant to 11 U.S.C. § 506(d). Any terms of the existing note and security agreement evidencing this claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 8 | Fox Capital Group, Inc. (Court Claim #18) | Yes |
| *Plan Treatment* | | |

This class shall consist of Fox Capital Group, Inc.'s claim and shall be allowed in the amount of $10,887.00. To the extent allowed as a secured claim under § 506 of the Bankruptcy Code. The Class 8 Claimant has an ostensible lien in the accounts receivable of Hollie Ray Boutique LLC (junior to the U.S. Small Business Administration) and these assets have no value to support a secured claim pursuant to 11 U.S.C. § 506. Therefore, the Class 8 Claimant will be treated as a secured creditor under the Plan in the amount of **$0.00.** Any allowed claim of Fox Capital Group, Inc. will be treated in the general unsecured class under this Plan. Confirmation of the Plan shall act as an avoidance of any lien rights held by Fox Capital Group, Inc. pursuant to 11 U.S.C. § 506(d). Any terms of the existing note and security agreement evidencing this

claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 9 | FirstBank (Court Claim #9) | Yes |
| *Plan Treatment* | | |

The secured claim of FirstBank shall be allowed in the amount of $13,356.02, less any Adequate Protection Payments received prior to Effective Date.

This secured claim will be paid under the plan as follows:

(i) Debtor has collateral securing this claim which is worth more than the outstanding balance. The Debtor will sell enough collateral to satisfy this claim in full within 60 days.

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 10 | All Allowed Unsecured Claims | Yes |
| *Plan Treatment* | | |

This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contact or unexpired lease, each allowed claim secured by a lien on property in which the Debtor has an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.

The Plan provides a pool of $8,000.00 to be paid pro-rata to the claimholders in this class. Non-priority unsecured creditors will receive approximately a .0045% disbursement. There shall be one (1) lump-sum payment of $8,000.00 (for total disbursement of $8,000.00) paid pro-rata to the claimholders in this class as follows:

$8,000.00 to be paid on or before June 2029.

| Class No.: | Holder of Claim or Interest : | Impaired |
|---|---|---|
| Class 11 | Equity Interests | No |
| *Plan Treatment* | | |

| The Debtor will retain all ownership rights in property of the estate. |
|---|
| |

  **4.02**  Waiver of Secured Status and Lien Rights by Claimants. *In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan.*

  **4.03**  Proof of Claim Controls Over Amount Scheduled by Debtor. The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

  **4.04**  Voiding of Liens. Except as otherwise provided under the Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims.

### ARTICLE V
### ALLOWANCE AND DISALLOWANCE OF CLAIMS

  **5.01**  Objection to Claims. The Debtor or any party in interest may file an objection to any claim in any class on or before 90 days following the Effective Date. Objections not filed within such time will be deemed waived. If any claim or portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

  **5.02**  Disputed Claim. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor, or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

  **5.03**  Delay of Distribution on Disputed Claims. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtor's sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

  **5.04**  Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtor shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

### ARTICLE VI
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

<u>6.01</u>    The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

Subject to Section 4.01 of this Plan, the Debtor assumes, the following executory contracts and unexpired leases as of the effective date of the Plan:

| Name of Other Party to Executory Contract/Lease | Description | Assignee |
|---|---|---|
| Landlord | Lease | N/A |

Notwithstanding anything in this Plan to the contrary, the Landlord shall have no obligation to file any objection to this Plan or to the proposed cure amount due under the Lease as such amount has been liquidated by the agreement of the parties and the Landlord's treatment under Section 4.01 of the Plan.

<u>6.02</u>    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any non-governmental creditors that believe they hold claims with respect to contracts rejected hereunder shall file a proof of claim on or before the deadline set by the Court. Any such timely filed allowed claims will participate in the distribution for unsecured creditors set out within the Plan. Any party to an unexpired lease or executory contract that is assumed in connection with this Plan that asserts Debtor has defaulted under that contract and whose cure amount is not stated by Debtor or who disagrees with Debtor's proposed cure amount shall file with the Court an application for allowance and payment of cure claim, identifying the amount allegedly due to cure any such defaults in accordance with § 365(b)(1)(A) of the Bankruptcy Code. Any such application must be filed prior to the Effective Date. The failure to file timely the application shall be deemed a full waiver of any rights available to the affected Claimant pursuant to § 365(b)(1)(A) of the Bankruptcy Code. All cure claims asserted pursuant to Debtor's Plan to which no objection is filed or to which an objection is filed but overruled by a Final Order of the Court shall become allowed cure claims, unless Debtor timely files a Notice of Rejection pursuant to this Plan. Notwithstanding anything in this section to the contrary, Debtor may reject any executory contract in the event Debtor determines that any allowed cure claim renders assumption of that contract not in Debtor's best interest, and the other party to the contract shall be entitled to file a Class 10 Claim for damages arising from the rejection.

ARTICLE VII
<u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

**7.01** The Debtor anticipates that the operations of Hollie Ray Boutique will provide sufficient cash flow to fund the Plan. The Debtor has consolidated locations, cut payroll and restocked inventory such that the Debtor will be able to fund this plan.

**7.02** If the plan is consensual, the Debtor will be the disbursing agent in distributing funds to allowed claims as provided under the plan. If the plan is non-consensually confirmed, the Sub Chapter V Trustee will be the disbursing agent.

ARTICLE VIII
GENERAL AND MISCELLANEOUS PROVISIONS

**8.01** **Definitions and Rules of Construction**. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

a. "Adequate Protection Payments" shall mean payments made by the Debtor to creditors holding claims secured by property of the Debtor, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b. "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

c. "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

d. "Court" shall mean the United States Bankruptcy Court for the Middle District of Tennessee and the Judge assigned to this case.

e. "Debtor" shall mean Hollie Ray Boutique LLC the status of, and the rights conferred to, a Debtor-in-possession by § 1107 of the Code.

f. "Disposable Income" shall mean all surplus income received by the Debtor after the payment of (i) expenditures necessary for the continuation, preservation, or operation of Hollie Ray Boutique LLC, and (ii) the reasonable and necessary living expenses of the Debtor and dependents.

g. "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable, or (iii) October 1, 2024 for purposes of the calculations and disbursements proposed within this Plan, an Effective Date of October 1, 2024 is presumed. However, the Debtor may at any

time designate an earlier Effective Date by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

h. "Interests" shall mean the ownership interests held by the Debtor in Property.

i. "Petition Date" shall mean March 1, 2024.

j. "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

k. "Plan Payments" shall mean all funds remitted by the Debtor, the Reorganized Debtor, and/or third parties on behalf of the Debtor or Reorganized Debtor to be distributed pursuant to the Plan.

l. "Reorganized Debtor" shall mean the Debtor after Confirmation.

8.02  **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03  **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.04  **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05  **Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06  **Retention of Jurisdiction of the Court**. In addition to the continued jurisdiction after plan Confirmation that is provided for as a matter of law by the Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a) To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331of the Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter final orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

(h) Except as otherwise provided in this Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Plan;

(i) To enter a final order concluding and terminating this case;

(j) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Sections 10.02 and 10.04 of this Plan; and

(k) To determine such other matters as may be provided for in the Confirmation order.

8.07    **Withdrawal of Plan**. At the option of the Debtor, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.08    **Retention of Claims**. Pursuant to § 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.09    **Continued Reporting Requirements**. Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation. After Confirmation, the Debtor is required to file quarterly reports until the case is administratively closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

8.10     **Exemptions from Transfer Tax**. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Code.

8.11     **Modification of the Plan**. The Debtor may propose amendments to or modifications of this plan pursuant to 11 U.S.C. § 1193.

8.12     **Early Payment**. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtor to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtor shall not be prohibited from making an early payment of the guaranteed amount to Class 10 claims, provided that the Debtor is current on any payments then required to Class 1 through Class 9 claims.

8.13     **Preservation of Claims and Causes of Action**. The Debtor retains and reserves all causes of action. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules or this Plan. The Debtor shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation order shall not bar the Debtor by *res judicata,* collateral estoppel or otherwise from collecting, prosecuting, or defending any matter, avoidance action, or cause of action. Any and all creditors identified in Questions 6 and/or 7 to Debtor's Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,825.00, maybe the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtor may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Plan, the Disclosure Statement, and the Debtor's filed Schedules and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtor within 90 days prior to the Petition Date.

8.14     **Default Under Plan**. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtor (i) fails to make monetary payment when due under the Plan and that default is not promptly cured following delivery of written notice of that default, (ii) fails to pay the fees of the Subchapter V Trustee within fifteen (15) days of entry of an order approving a fee application of the Trustee (iii) fails to insure the property securing the creditor's claim for the value of the property, or (iv) disposes of the property securing the claim, normal wear and tear excepted, without either the consent of

the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

      8.15    <u>Notice</u>. Unless otherwise directed by the Debtor in writing, notice of default shall be sufficient if delivered as follows:

| | |
|---|---|
| If to the Debtor or Reorganized Debtor: | Hollie Ray Boutique LLC<br>330 Mallory Station Road Suite G 21<br>Franklin TN 37067 |
| With copy to: | Keith D. Slocum PBR. 023024<br>370 Mallory Station Road Suite 504<br>Franklin TN, TN 37067<br>notice@keithslocum.com |
| If to the Trustee: | TIMOTHY STONE<br>50 Old Hickory Blvd, Building Two, Suite 150<br>Nashville, Tennessee 615-440-8273<br>tstone@newpointadvisors.us |

## ARTICLE IX
## EFFECT OF CONFIRMATION, DISCHARGE, AND INJUNCTION

      9.01    <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan, the debtor shall remain in possession of all property of the estate. The Debtor's estate property shall vest back in the Debtor upon completion of the Plan Payments pursuant to 11 USC 1186.

      9.02    <u>Property Free and Clear</u>. Except as otherwise provided in the Plan, all property shall be free and clear of all claims, liens, and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Plan.

      9.03    <u>Legal Binding Effect</u>. The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

      9.04    <u>Effect on Third Parties</u>. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

      9.05    <u>Release of Claims</u>. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtor or any of

its assets or properties, including without limitation any claim accruing after the Petition Date and prior to the Effective Date.

9.06    **Permanent Injunction**. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation order shall provide, among other things, that all claimants and persons who have held, hold or may hold claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of claims against the Debtor, or on account of claims released pursuant to section 9.05 of the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a claim. This does not enjoin the prosecution of any claims arising on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any claim that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative claims incurred prior to the date of Confirmation are permanently enjoined from asserting any Claim against the Debtor or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Code.

9.07    **Exculpation**. Except as otherwise provided in the Plan or Confirmation order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

9.08    **Discharge [if under § 1191(a)]**. If this Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.09    **Discharge [if under § 1191(b)]**. If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 5 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

# ARTICLE X
## CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

**10.01. Substantial Consummation; Closing of the Case.** Regardless of whether this Plan is confirmed under § 1191(a) or (b), after the Effective Date and commencement of Plan Payments, the Reorganized Debtor shall file *a Notice of Substantial Consummation.*

(a) If this Plan is confirmed under § 1191(a), then after the Notice of Substantial Consummation*,* the Reorganized Debtor shall seek an Order closing the case through the filing of a final accounting and Motion for a Final Decree as provided in Bankruptcy Rule 3022. After closing of the case, the Reorganized Debtor shall remit all Plan Payments to the appropriate holders of allowed claims provided for in this Plan.

(b) If this Plan is Confirmed under § 1191(b), then after the Notice of Substantial Consummation*,* the case will remain open until the satisfaction of the obligations within this Plan, at which time the Reorganized Debtor shall seek an Order closing the case through the filing of a final accounting and Motion for a Final Decree as provided in Bankruptcy Rule 3022.

**10.02 Professional Fees after Confirmation.** After Confirmation, the Reorganized Debtor may continue to avail to the services of professional persons whose employment was approved at or prior to closing of the case in performance of this Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an invoice shall be furnished by such professional person to the Reorganized Debtor (or the Trustee, if applicable), who shall promptly pay the same, subject to any objection being raised thereby. In the event of a dispute, the retained jurisdiction of the Bankruptcy Court in Section 8.06(j) of this Plan shall be utilized to review the reasonableness of fees or expenses requested pursuant to this section.

 /s/ Erica Reynolds         
Hollie Ray Boutique LLC
By: Erica Reynolds

Respectfully Submitted,

Slocum Law

/s/ Keith D Slocum            
Keith D. Slocum PBR. 023024
370 Mallory Station Road Suite 504
Franklin TN, TN 37067
P (615) 656-3344 F (615) 647-0651
notice@keithslocum.com